IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARY HAIRSTON,                    )
                                  )
            Plaintiff,            )
                                  )
     v.                           )          1:13CV656
                                  )
LIBERTY LIFE ASSURANCE            )
COMPANY OF BOSTON,                )
                                  )
            Defendant.            )


<u>**MEMORANDUM OPINION AND ORDER**</u>

**OSTEEN, JR., District Judge**

     Plaintiff Mary Hairston ("Plaintiff") initiated this action

in Guilford County Superior Court, pursuant to section 502 of

the Employee Retirement Income Security Act of 1974 ("ERISA"),

codified as amended at 29 U.S.C. § 1132.  Defendant Liberty Life

Assurance Company of Boston ("Defendant") removed this action,

pursuant to 28 U.S.C. § 1441. (<u>See</u> Notice of Removal (Doc. 1).)

     Presently before this court is Defendant's Motion for

Judgment on the Administrative Record.  (Doc. 28.)  Plaintiff[1]

---

[1] Plaintiff also appears to be making a Motion for Summary
Judgment on the Administrative Record. (<u>See</u> Pl.'s Resp. (Doc.
37) at 4.) Because Plaintiff's counsel was allowed to withdraw
(Doc. 25), Plaintiff is currently proceeding <u>pro se</u>.  As such,
this court will construe Plaintiff's pleading liberally.  <u>See</u>
<u>Boag v. MacDougall</u>, 454 U.S. 364, 365 (1982) (per curiam).
Nonetheless, for the reasons stated in this opinion, this court
will deny Plaintiff's motion.

has responded to Defendant's motion (Doc. 37), and Defendant has replied (Doc. 38).  This motion is now ripe for ruling.

For the reasons set forth herein, this court will grant Defendant's Motion for Judgment on the Administrative Record and this case will be dismissed.

## I.    FACTS

The facts in this case have been taken from the Administrative Record, submitted by Defendant.  (See Notice of Filing Admin. Record, Ex. B, Administrative Record ("Admin. Record") (Doc. 27-3).)

Plaintiff was employed by Technimark, LLC, for 20 years, but last worked for Technimark in mid-November 2012.  (See id. at 8 (Phone Note 1), 81-82.)[2]  During her employment, Plaintiff developed a variety of serious health problems and medical conditions, including degenerative disk disease.  (See Pl.'s Resp. (Doc. 37) at 23.)  By late 2012, Plaintiff's primary care provider, Dr. Jeffrey Hooper, opined that she was totally disabled.  (See id. at 1-2.)

Defendant administers Technimark's Group Disability Income Policy (the "Policy").  A copy of the Policy has been filed with

---

[2]    All citations to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

-2-

this court. (See Notice of Filing Admin. Record, Ex. A, Group
Disability Income Policy ("Policy") (Doc. 27-2).) Plaintiff
filed a claim for short-term disability benefits on November 21,
2012, claiming muscle spasms in her shoulders and neck along
with weight loss. (Admin. Record (Doc. 27-3) at 8 (Claim Notes
1-2).) In the first conversation between Plaintiff and
Defendant, Plaintiff's Disability Case Manager ("DCM") asked
Plaintiff for medical evidence supporting her disability claim
(id. at 8 (Phone Note 1), 73-74), and on November 27, 2012, the
DCM requested treatment notes, diagnostic tests, and procedure
reports from Dr. Hooper. (Id. at 77-80.) In a letter dated
November 27, 2012, addressed to Plaintiff, the DCM explained
that Plaintiff had until January 10, 2013, to complete her file
but asked that Plaintiff submit the evidence by December 11,
2012, in order to expedite her file. (Id. at 73-74.)

After additional requests for medical records by Defendant
(see id. at 6-7 (Phone Notes 3-5)), Dr. Hooper provided
treatment notes from Plaintiff's appointments dated August 6,
2012, August 24, 2012, September 21, 2012, October 19, 2012, and
November 16, 2012. (Id. at 55-59.) In a prescription note from
the August 24 appointment, Dr. Hooper indicated that Plaintiff
should not lift more than 15 pounds. (Pl.'s Resp., Ex. G (Doc.

-3-

37-7) at 2.)   The appointment notes were reviewed by a Nurse Case Manager ("NCM"), and the NCM found that the medical information provided by Dr. Hooper did not support the restrictions and limitations reported by Plaintiff, as there were no exam findings, no indication that any testing had been performed, no indication of whether Plaintiff's range of motion was affected by her alleged impairments, and no information on where the spasms were located.   (Admin. Record (Doc. 27-3) at 5 (MDS Note).)

Following the NCM's review, Defendant denied Plaintiff's short-term disability claim, finding there was insufficient medical evidence to prove that Plaintiff was unable to fulfill the requirements of her position. (Id. at 47.)   Defendant notified Plaintiff by letter dated December 11, 2012 that it was denying her claim.   (Id. at 46-48.)   In its letter, Defendant explained that Plaintiff could provide additional medical evidence and Defendant gave examples of the documentation that could support her disability claim.   (Id. at 47.)

Plaintiff then appealed the denial of short-term disability benefits.   (Id. at 4 (Claim Note 25).)   On December 15, 2012, her file was referred to Defendant's Appeals Review Unit.   (Id. at 2 (Claim Note 29), 43.)   Before that, on December 11, 2012,

-4-

Dr. Hooper called Defendant to contest the denial of Plaintiff's benefits.  (Id. at 4 (Phone Note 12).)  During the conversation with Dr. Hooper, Defendant explained that it needed exam results in order to approve Plaintiff's claim.  (Id.)  The next day, Defendant received a letter from Dr. Hooper, explaining why he believed Plaintiff was disabled and entitled to short-term disability benefits.  (Id. at 4 (Claim Note 24), 50.)  Dr. Hooper drew a connection between Plaintiff's medical condition in 2012 - including neck and shoulder spasms, bi-lateral hand pain, weight loss, headaches, hair loss, fatigue, and insomnia - and her "status post cervical spine surgery in 2008 and cervical spine discectomy and cervical spine fusion in 2009."  (Id. at 50.)  Dr. Hooper also recited results from an undated neurological exam that showed some weakness in Plaintiff's upper extremities. (Id.)  In a subsequent call, Plaintiff confirmed that there were no other diagnostic test results to be submitted on appeal.  (Id. at 4 (Phone Note 14).)

Another NCM then reviewed the additional information provided by Dr. Hooper and concluded that "based on available records," there was "no evidence of diagnostics to reflect acute pathology in neck/low back/shoulder or nerve related dysfunction." (Id. at 3 (MDS Note).)  Specifically referencing

-5-

the neurological exam results provided by Dr. Hooper, the NCM explained that the results of the exam did not explain how "mild strength abnormalities" in Plaintiff's upper extremities were "impacting functionality" or whether this was a change from Plaintiff's "baseline." (Id.) Moreover, the NCM explained that results from other office visits had not provided corroborating evidence of these limitations, and the NCM noted that Plaintiff had been taking pain medication for a long period of time due to Plaintiff's "long standing complaint of pain." (See id.) These findings were then incorporated into Defendant's decision-making process on Plaintiff's appeal. (See id. at 15.)

On January 9, 2013, Dr. Hooper provided additional medical records from Regional Physician's Neurosurgery. (See id. at 17-42.) These records pertained to Plaintiff's treatment and back surgery in 2008. (See id.) These medical records were added to the Administrative Record and were incorporated into Defendant's decision-making process on Plaintiff's appeal. (See id. at 15.)

Although Plaintiff does not dispute the foregoing facts, Plaintiff notes that there were other events throughout this time period, as reflected in the Administrative Record, which slowed the process of filing her claim and providing the required medical evidence. Plaintiff notes that she was

-6-

transferred from one DCM to another soon after she filed her
claim and that it took a week to effectuate this transition.
(See id. at 7 (Claim Note 11) (noting transition to new DCM on
November 29); id. at 6 (Phone Note 5) (advising Plaintiff of DCM
transition on December 4).)  Plaintiff also alleges that the DCM
originally faxed its correspondence with Dr. Hooper to the wrong
number, taking an additional two days to get in touch with Dr.
Hooper.  (See id. at 6 (Claim Notes 14, 17).)  Furthermore,
Plaintiff highlights that this process fell during the holiday
season, making it difficult to schedule appointments with
specialists.

Nonetheless, on January 17, 2013, the Appeals Review Unit
informed Plaintiff that it was denying her appeal. (See id. at 2
(Claim Note 31), 14-16.)  Defendant ultimately concluded,
"[T]here is insufficient medical evidence including exam or
diagnostic findings or an intensity of treatment to substantiate
a condition resulting in restrictions and limitations to
preclude occupation function effective November 20, 2012."  (Id.
at 15.)

Plaintiff then filed suit challenging Defendant's decision
in the Superior Court for Guilford County on July 16, 2013

-7-

(Compl. (Doc. 4)), and the case was removed to this court on August 12, 2013. (Def.'s Notice of Removal (Doc. 1).)

## II. __ANALYSIS__

Plaintiff initiated this action to recover benefits owed to her from November 27, 2012 through May 20, 2013, pursuant to 29 U.S.C. § 1132(a)(1)(B).[3]  (See Pl.'s Resp. (Doc. 37) at 1.) Where an administrator has been given discretion on whether or not a claimant is eligible for benefits, "the standard for review under ERISA of [an administrator's] discretionary decision is for abuse of discretion," and this court is not to "disturb such a decision if it is reasonable." Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335, 342 (4th Cir. 2000) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989)); see also Carden v. Aetna Life Ins. Co., 559 F.3d 256, 260 (4th Cir. 2009) (citing Metro. Life Ins. Co. v. Glenn, 554 U.S. 105 (2008)).

To evaluate whether the decision was reasonable, courts in the Fourth Circuit look to a number of factors, often referred to as the "Booth factors":

---

[3] Plaintiff also asserted a second cause of action, claiming that Defendant acted in bad faith in denying Plaintiff's short-term disability benefit request.  This court subsequently dismissed that cause of action per a joint motion to dismiss. (Order (Doc. 13).)

-8-

(1) the language of the plan; (2) the purposes and
goals of the plan; (3) the adequacy of the materials
considered to make the decision and the degree to
which they support it; (4) whether the fiduciary's
interpretation was consistent with other provisions in
the plan and with earlier interpretations of the plan;
(5) whether the decisionmaking process was reasoned
and principled; (6) whether the decision was
consistent with the procedural and substantive
requirements of ERISA; (7) any external standard
relevant to the exercise of discretion; and (8) the
fiduciary's motives and any conflict of interest it
may have.

Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353, 359 (4th

Cir. 2008) (quoting Booth, 201 F.3d at 342-43); see also

Williams v. Metro. Life Ins. Co., 609 F.3d 622, 631 (4th Cir.

2010).

In reviewing a decision for abuse of discretion, the scope

of materials this court can consider is limited, such that,

"[g]enerally, consideration of evidence outside of the

administrative record is inappropriate . . . ." Helton v. AT&T

Inc., 709 F.3d 343, 352 (4th Cir. 2013). However, the Fourth

Circuit has clarified that the real issue is "whether evidence

was known to the administrator when it rendered its decision,

not whether [the evidence] was part of the administrative

record." Id.

Accordingly, this court will consider the evidence

presented in the Administrative Record, any evidence presented

by Plaintiff that was known to Defendant at the time it made its decision, and the applicable <u>Booth</u> factors[4] to determine whether Defendant's decision was reasonable.

Before conducting this inquiry, there is somewhat of an open question as to what procedural standard this court should use to consider the factual matter presented in the Administrative Record, as a "motion for judgment on the administrative record . . . does not appear to be authorized in the Federal Rules of Civil Procedure." <u>See</u> <u>Muller v. First Unum Life Ins. Co.</u>, 341 F.3d 119, 124 (2d Cir. 2003). In deciding such a motion, some circuits have applied the provisions of Rule 52 of the Federal Rules of Civil Procedure in ERISA cases, where the court acts as the trier of fact and conducts a "bench trial 'on the papers.'" <u>See</u> <u>id.</u> Other courts have either explicitly or implicitly treated these motions as motions for summary judgment. <u>Id.</u> (citing <u>Williams v. Unum Life Ins. Co. of Am.</u>, 250 F. Supp. 2d 641, 648-49 (E.D. Va. 2003)). Still others have adopted a modified standard. <u>See</u> <u>Wilkins v. Baptist Healthcare</u>

---

[4] The parties do not direct this court to any evidence concerning "the purposes and goals of the plan," "whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan," or any argument concerning "external standard relevant to the exercise of discretion." Therefore, these <u>Booth</u> factors will not be considered in this court's current analysis.

Sys., Inc., 150 F.3d 609, 619 (6th Cir. 1998).  The Fourth
Circuit has not spoken to this issue, but this court finds it
need not resolve this question for the purposes of this motion.
Although Plaintiff disputes Defendant's determination that there
was insufficient evidence to approve her disability claim and
protests alleged errors or omissions made by Defendant, there is
no genuine dispute over the evidence that Defendant considered
or the procedures it followed in making its decision.
Therefore, this court is able to rule for Defendant as a matter
of law without having to resolve any factual disputes, making
the summary judgment standard proper in this instance.  See
Neumann v. Prudential Ins. Co. of Am., 367 F. Supp. 2d 969, 980
(E.D. Va. 2005); see also Fed. R. Civ. P. 56(c); Celotex Corp.
v. Catrett, 477 U.S. 317, 322–23 (1986).

    A.   **Language of the Policy**

    The Policy at issue in this case gives Defendant discretion
in considering who is disabled under the Policy.  The Policy
provides that:

> [Defendant] shall possess the authority, in its sole
> discretion, to construe the terms of this policy and
> to determine benefit eligibility hereunder.
> [Defendant's] decision regarding construction of the
> terms of this policy and benefit eligibility shall be
> conclusive and binding.

(Policy (Doc. 27-2) at 60.)  Thus, Defendant has sole discretion
to determine whether Plaintiff qualifies for short-term
disability benefits.  Other provisions of the Policy give
discretion to Defendant to determine certain matters, such as,
what proof is adequate to support a disability finding.  (See
id. at 19.)  While this broad grant of discretion does not end
this court's inquiry, Defendant's broad discretionary power
under the Policy indicates that this court is to review
Defendant's finding for an abuse of discretion, not to subject
Defendant's decision to a de novo review.  See Firestone Tire &
Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) ("[A] denial of
benefits challenged under § 1132(a)(1)(B) is to be reviewed
under a de novo standard unless the benefit plan gives the
administrator or fiduciary discretionary authority to determine
eligibility for benefits or to construe the terms of the plan."
(emphasis added)).

**B.    Adequacy of Materials Considered**

Plaintiff contends that Defendant "rushed the processing of
her claim."  (Pl.'s Resp. (Doc. 37) at 5.)  Based on the
allegations in her brief, this argument appears to be based on
Defendant not giving Plaintiff sufficient time to submit medical
evidence in support of her claim.  This court finds that

Defendant gave Plaintiff sufficient time to submit evidence and based its determination on an adequate consideration of all relevant materials provided by Plaintiff.

In denying Plaintiff's claim, Defendant considered all evidence presented by Plaintiff. The denial letters issued by Defendant indicate that Defendant considered the treatment notes and opinions offered by Dr. Hooper. (See Admin. Record (Doc. 27-3) at 14-16, 46-48.) Moreover, the report of the NCM who reviewed Plaintiff's case in December indicated that she considered Plaintiff's complaints of back and neck pain; Dr. Hooper's treatment notes from August, September, October, and November; and the medication prescribed to manage her pain and treat her back spasms. (Id. at 5 (MDS Note completed by NCM Lewis).) The note from the NCM who reviewed Plaintiff's record after Defendant received Dr. Hooper's additional medical records indicates that she considered Dr. Hooper's treatment notes as well as Dr. Hooper's letter in support of Plaintiff's claim. (Id. at 3 (MDS Note completed by NCM Greene).) Thus, Defendant's records indicate that it considered the relevant documentation offered by Plaintiff.

Nonetheless, because Defendant denied Plaintiff's claim for lack of sufficient medical evidence, there is a question of

-13-

whether Defendant offered sufficient opportunity for Plaintiff
to submit such evidence or disregarded other relevant evidence
submitted by Plaintiff.  This court notes that Defendant
requested medical records from Plaintiff and Dr. Hooper on
multiple occasions.  (See, e.g., id. at 5-7 (Phone Notes 2, 3,
4, 5, 7) (Claim Notes 3, 5, 7, 8, 9, 17), 63-64, 72-74, 77-78.)
Nonetheless, Plaintiff makes several arguments.

First, Plaintiff claims that Defendant did not give
Plaintiff sufficient time to undergo diagnostic tests that would
support her claim.  Defendant explained that all medical
evidence was to be submitted by January 10, 2013 - 45 days after
Defendant first asked Dr. Hooper for Plaintiff's medical
records.  (See id. at 73-74.)  Plaintiff contends that she
should have had 180 days to submit such evidence.  (Pl.'s Resp.
(Doc. 37) at 6-7, 16.)  Plaintiff believed she had 180 days to
provide such evidence based on (1) a provision in the Policy
that states, "Satisfactory Proof of loss must be given to
[Defendant] no later than 180 days after the end of the
Elimination Period," which would have been approximately May 25,
2013 (see Policy (Doc. 27-2) at 61), and (2) a portion of the
denial letter that said Plaintiff must file her appeal within
180 days after the receipt of the denial letter. (See Admin.

-14-

Record (Doc. 27-3) at 47.)  However, the ERISA regulations
dictate that Defendant must make a determination on Plaintiff's
disability claim within 45 days of receiving the claim.
29 C.F.R. § 2560.503-1(f)(3).  Moreover, the ERISA regulations
only require that Defendant give Plaintiff 45 days to provide
the information necessary to decide the claim.  See id.
Additionally, Plaintiff indicated in December 2012 that she had
no other diagnostic exam results to report.  Therefore, it was
not an error for Defendant to impose the 45-day time limit.
This court recognizes that there must have been some difficulty
in obtaining diagnostic tests during the holiday season, as
Plaintiff notes (see Pl.'s Resp. (Doc. 37) at 11), but this does
not relieve Plaintiff of the responsibility of providing medical
evidence to support her disability claim.[5]

---

[5] Plaintiff contends that there is a genuine dispute as to
whether she spoke with an employee of Defendant on November 26,
2012.  The Administrative Record indicates that a conversation
occurred between Defendant's employee and "Mary" at Dr. Hooper's
office (Admin. Record (Doc. 27-3) at 7 (Phone Note 2)), but
Plaintiff, whose name is Mary, says that she does not remember
the conversation.  Plaintiff also notes that the medical records
reviewed by NCM Lewis and NCM Greene do not mention Plaintiff
having an appointment with Dr. Hooper on November 26, 2012.
(Pl.'s Resp. (Doc. 37) at 12.)  As Defendant points out, this
reference may have been to an office worker named Mary, not
Plaintiff.  Plaintiff is referred to as "EE" throughout the
Administrative Record.  Regardless, this one mistake, even if
Plaintiff is correct, does not render Defendant's decision
unreasonable and therefore is not material.

-15-

Plaintiff also claims that Defendant improperly concluded that Plaintiff had not submitted evidence of her degenerative disk disease, when in fact Plaintiff received short-term disability benefits based on the same condition in 2008 and 2009. (Pl.'s Resp. (Doc. 37) at 9-11; see also Pl.'s Resp., Ex. F (Doc. 37-6) (providing Plaintiff's medical records from 2008 and 2009); Admin. Record (Doc. 27-3) at 17-42 (same).) Specifically, Plaintiff claims Defendant "had previous knowledge that [Plaintiff's] condition would not improve with time according to the letter from Dr. Neave," and as such, "Dr. Hooper's and two previous Doctors medical determinations, medical records and the MRI's results from 2008 and 2009; should have been sufficient information for [Defendant] to grant the plaintiff her short term disability benefits." (Pl.'s Resp. (Doc. 37) at 9-10.) Defendant's Appeals Review Consultant, Heidi Jacques, considered the medical evidence from 2008 and 2009 but found that the records "did not substantiate the level of Plaintiff's impairment on November 20, 2012 as [the records] related solely to Plaintiff's medical condition approximately four (4) years prior to her date of disability." (Def.'s Mem. in Supp. of Mot. for J. on the Admin. Record (Doc. 29) at 11; see also Admin. Record (Doc. 27-3) at 2 (Claim Note 31).) Based

on this reasoning, this court finds that Defendant did not abuse its discretion in disregarding Plaintiff's evidence from 2008 and 2009.

Finally, it was not error to refuse to consider the medical evidence presented after Plaintiff's appeal was closed. Plaintiff presents evidence of an MRI that took place in March 2013. (See Pl.'s Resp., Ex. H (Doc. 37-8) at 7-8.) Plaintiff attempts to use the MRI to show "how badly damaged and deteriorated [Plaintiff's] neck happens to be in since the prior two surgeries [in 2008 and 2009]." (Pl.'s Resp. (Doc. 37) at 10.) The Administrative Record shows Plaintiff sent the MRI to Defendant (Admin. Record (Doc. 27-3) at 2 (Claim Note 34)), but Defendant did not discuss this information in its denial letter because the March 2013 MRI did not take place and was not submitted until after Defendant denied Plaintiff's appeal on January 17, 2013. (See id. at 2 (Claim Notes 31, 34), 14.} This court is only to consider whether Defendant's decision was reasonable given the evidence known to Defendant when it made its decision. See Elliott v. Sara Lee Corp., 190 F.3d 601, 608 (4th Cir. 1999). Therefore, this court will not disturb Defendant's decision based on evidence collected after Plaintiff's file was closed.

-17-

C.   **Reasoned and Principled Decision-making Process**

Plaintiff argues that the process shows "a gigantic amount of confusion."  (Pl.'s Resp. (Doc. 37) at 13.)  Although Plaintiff attacks aspects of Defendant's decision-making process, this court finds that Defendant engaged in a reasoned and principled decision-making process in denying Plaintiff's claim for short-term disability benefits.

As stated, Defendant rejected Plaintiff's claim because there was insufficient evidence, and this court finds that Defendant used an adequate process in making this determination. The Policy is clear that "[p]roof must be submitted in a form or format satisfactory to [Defendant]," and the Policy specifies that it must receive "objective medical evidence in support of a claim for benefits."  (Policy (Doc. 27-2) at 19.)  Plaintiff based its determination on the medical opinion of two health care professionals, NCM Greene and NCM Lewis, both of whom found that there was insufficient evidence to support Plaintiff's complaints.  (See Admin. Record (Doc. 27-3) at 3 (MDS Note), 5 (MDS Note).)  Additionally, Defendant provided an appeals process by which Plaintiff could challenge the initial adverse determination made by Defendant.  (See id. at 47-48 (advising Plaintiff of her right to appeal).)  Despite these steps in the

-18-

decision-making process, Plaintiff challenges the process by which Defendant made its decision to deny Plaintiff's claim.

Plaintiff contests the conclusion of one of the NCMs assigned to the case, NCM Lewis, who reviewed Plaintiff's medical evidence, saying that the notes of NCM Lewis were contradictory. (Pl.'s Resp. (Doc. 37) at 15-16.) Specifically, Plaintiff notes that NCM Lewis "repeats the same sentence over twice in her documentations dated (9/21/12) but gives different symptoms on that day," with the first sentence saying Plaintiff complained of back and neck pain and the second sentence saying Plaintiff reported low back pain and fatigue. (See id. at 15; Admin. Record (Doc. 27-3) at 5 (MDS Note).) Plaintiff claims that these sentences contradict each other and could show that NCM Lewis mixed up Plaintiff's file with that of another person's disability claim, or that this contradiction could be evidence that NCM Lewis's conclusions were flawed. (Pl.'s Resp. (Doc. 37) at 15-16.) However, NCM Lewis's report shows that she worked through each of the treatment notes made by Dr. Hooper. The notes from Plaintiff's September 21 appointment indicate that Plaintiff reported back pain, neck pain, and stress, and Dr. Hooper decided to restart medication for hypertension or "HTN." (See Admin. Record (Doc. 27-3) at 57.) In her first

-19-

note for an appointment dated September 21, NCM Lewis indicated that Plaintiff reported "back and neck pain" and "increased stress," and noted that Plaintiff was "restarted on medication for her hypertension." (See id. at 5 (MDS Note)). The notes from Plaintiff's October 19 appointment indicate that Plaintiff reported low back pain or "LBP," shoulder pain, and fatigue. (See id. at 56.) In her second note for an appointment dated September 21, NCM Lewis indicated that Plaintiff reported "low back pain and fatigue." (See id. at 5 (MDS Note)). Therefore, it appears that NCM Lewis merely provided the wrong date for the October 19 appointment as she reviewed Dr. Hooper's notes. As a result, there is no unexplained contradiction between NCM Lewis's review and Dr. Hooper's notes, indicating that NCM Lewis adequately considered the medical evidence available at the time.

Plaintiff also contests the conclusions of the other NCM assigned to the case, NCM Greene, noting that NCM Greene was to review Plaintiff's medical evidence from 2008 to 2012, but that based on the time entries, it appears that NCM Greene denied Plaintiff's claim before she even examined Plaintiff's medical records. (See Pl.'s Resp. (Doc. 37) at 24.) If NCM Greene did review Plaintiff's medical evidence after making the decision to

-20-

deny Plaintiff's claim, Plaintiff argues this would not be "a reasonable and precise review" of Plaintiff's claim. (Id.) However, the thorough review provided by NCM Greene indicates that NCM Greene considered all of the evidence presented by Plaintiff and Dr. Hooper. (See Admin. Record (Doc. 27-3) at 3 (MDS Note).) More importantly, the Appeals Review Consultant, Heidi Jacques, made the decision to deny Plaintiff's appeal, not NCM Greene. (See id. at 2 (Claim Note 31).) Thus, this court finds Defendant used a reasoned decision-making process as it considered Plaintiff's appeal based on the evaluations of the evidence by the NCMs.

Plaintiff also argues that Defendant's decision was not reasoned or principled as it disregarded and contradicted the opinion of her treating physician, Dr. Hooper. Plaintiff asserts that she was "deemed disabled by her attending physician" (Pl.'s Resp. (Doc. 37) at 1-2), and as a result, any determination in conflict with this diagnosis is error. For instance, Dr. Hooper had indicated in an August 24 prescription note that Plaintiff should not lift more than 15 pounds (Pl.'s Resp., Ex. G (Doc. 37-7) at 2-3), and in his letter to Defendant, Dr. Hooper indicated that Plaintiff showed some weakness in her upper extremities in an undated neurologic exam.

-21-

(Admin. Record (Doc. 27-3) at 50.)  Because Plaintiff's job
required lifting 25 to 50 pounds (see id. at 47, 81), Plaintiff
claims that these limitations show that she cannot perform the
duties of her position and is disabled.  (Pl.'s Resp. (Doc. 37)
at 9.)  There are two reasons why it was proper for Defendant to
discount Dr. Hooper's opinion.  First, unlike in Social Security
benefit cases, ERISA "do[es] not command plan administrators to
credit the opinions of treating physicians over other evidence
relevant to the claimant's medical condition."  Black & Decker
Disability Plan v. Nord, 538 U.S. 822, 825 (2003).  Second,
Defendant found that Dr. Hooper's opinion was not supported by
diagnostic tests or other objective evidence (Admin. Record
(Doc. 27-3) at 3 (MDS Note)), and as explained above, Plaintiff
does not point to other relevant evidence that Defendant should
have considered.  See supra Section II.B.  As a result, the
decision to disregard Dr. Hooper's unsupported opinion was
reasonable and not an abuse of discretion.

     Finally, Plaintiff claims that Defendant made a mistake by
placing Plaintiff in Class 3 under the Policy, when Plaintiff
was actually a Class 5 employee under the Policy.  (See Admin.
Record (Doc. 27-3) at 9 (noting Plaintiff as being in Class 3).)
Under the Policy, Class 3 employees receive approximately

-22-

$200.00 in weekly short-term disability benefits, while Class 5 employees receive approximately $300.00 in weekly benefits. (See Policy (Doc. 27-2) at 6.) About this mistake, Plaintiff claims, "If this information is incorrect . . . then there is definitely a problem with [Defendant's] record keeping due to the lack of knowledge; regarding her short term disability benefit contributions." (Pl.'s Resp. (Doc. 37) at 9.) However, as Defendant explains, this calculation did not affect the disability determination made by Defendant because Plaintiff's class would merely have determined the benefit Plaintiff was to receive if she were eligible for short-term disability benefits. Because Defendant found Plaintiff was not disabled within the meaning of the Policy, this error did not affect Defendant's decision and does not provide a basis for this court to reverse the Defendant's decision.

   D.   **Procedural and Substantive Requirements of ERISA**

     Plaintiff also alleges certain procedural irregularities within Defendant's review of her claim. Plaintiff spends several pages of her brief arguing that Defendant's employees delayed resolution of Plaintiff's claim, that Defendant's employees acted in "an unprofessional and confusing fashion," and that these actions meant that Plaintiff could not meet the

-23-

deadline for having all medical tests completed. (Pl.'s Resp. (Doc. 37) at 6-8, 16-22.) Plaintiff notes that the DCMs assigned to her case used the wrong number when faxing Dr. Hooper on multiple occasions. (Id. at 19-20.) Additionally, as stated above, Plaintiff believed that the 45-day time limit for providing medical evidence was unnecessarily rushed, making Defendant's inefficiencies or negligence harmful to Plaintiff. (Id. at 6-7.)

Although Plaintiff uses words such as "unacceptable," "unprofessional," "disgraceful," and "repulsive" to describe Defendant's handling of her claim (see id. at 20-22), none of the irregularities alleged by Plaintiff violate the substantive and procedural requirements of ERISA. Despite the errors that Plaintiff alleges, Dr. Hooper was allowed to submit additional medical information in support of Plaintiff's claim, and Plaintiff indicated that no other information would be submitted before Defendant determined Plaintiff's appeal. (Admin. Record (Doc. 27-3) at 4 (Phone Note 14).) Therefore, this court finds

that any errors committed by Defendant's employees did not affect Plaintiff's claim for short-term disability.[6]

### E. Defendant's Motives and Conflict of Interest

Plaintiff claims that Defendant has an interest in not paying Plaintiff because Defendant previously paid Plaintiff disability in 2008 and 2009. (Pl.'s Resp. (Doc. 37) at 9.) Thus, Plaintiff alleges that Defendant made an unreasonable decision in order to avoid paying Plaintiff the benefits she was due under the Policy.

Because Defendant "serves both as administrator of the plan with discretionary authority to determine entitlement to benefits and to construe disputed terms and as insurer of the plan with responsibility for paying benefits," Plaintiff is correct that Defendant "has a conflict of interest." See

---

[6] Plaintiff claims that the "most offensive disservice happened to [Plaintiff] when there was a mix up with her short term disability claim file and two other disability claims." (Pl.'s Resp. (Doc. 37) at 21.) Plaintiff requested her file (Admin. Record (Doc. 27-3) at 2 (Claim Note 32)), and Plaintiff explains that Defendant actually sent someone else's file upon her request. (Pl.'s Resp. (Doc. 37) at 21.) Under ERISA, a claimant is "entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." See 29 C.F.R. § 2560.503-1{j}(3). Although Defendant may have sent Plaintiff the wrong file initially, Plaintiff was eventually given access to her file. Therefore, it does not appear that Defendant violated this provision of ERISA by making this error.

Carden, 559 F.3d at 260.  Nonetheless, this court "must consider the administrator's conflict of interest as only 'one factor among many' in determining the reasonableness of the administrator's decision exercising discretionary authority." Id. at 260-61 (quoting Glenn, 554 U.S. at 116); see also Williams, 609 F.3d at 631 (noting that a modified proof structure in conflict-of-interest cases was rejected in Glenn).

As explained previously, this court finds that Defendant used a reasoned and principled decision-making process, considered adequate materials, and did not violate the provisions of ERISA in making the decision.  Thus, when considering Defendant's conflict of interest in light of the totality of the factors outlined above, this court does not find that Defendant acted unreasonably or unfairly.

For the foregoing reasons, this court finds that Defendant used a deliberate, principled, and reasoned decision-making process in denying Plaintiff's claim for short-term disability benefits.  In the end, the Policy gives Defendant discretion in determining what proof is necessary to support a disability claim, and Defendant did not abuse its discretion in finding that Plaintiff had not submitted sufficient evidence to support her claim.  Because there is no evidence that Defendant violated

-26-

any provisions of the Policy or the substantive or procedural requirements of ERISA, Defendant's decision to deny benefits based on this lack of medical evidence is reasonable, and this court will not disturb that decision.

## III. <u>CONCLUSION</u>

**IT IS THEREFORE ORDERED** that Defendant's Motion for Judgment on the Administrative Record (Doc. 28) is **GRANTED** and that this case is **DISMISSED.** To the extent Plaintiff makes a Motion for Summary Judgment on the Administrative Record in her Response to Defendant's motion (Doc. 37), that motion is **DENIED.** A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 12th day of June, 2015.

_____
William L. Osteen, Jr.
United States District Judge